**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Raymond Johnson,** **Civil No. 01-1827 (JRT/SRN)**

**Plaintiff,**

v.

**REPORT AND RECOMMENDATION**

**Warden R. Timothy O'Dell and Corrections Corporation of America, Inc., sued as Prairie Correctional Facility,**

**Defendants.**

---

Plaintiff is pro se.

Robert M. Lewis, Esq. and Rebecca A. Chaffee, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on Defendants' Motion to Dismiss or for Summary Judgment (Doc. No. 2). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, this Court recommends that Defendants' Motion to Dismiss or for Summary Judgment be granted.

## I. DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT.

### A. Procedural History.

In the present case, Plaintiff filed the Complaint on September 18, 2001, in Conciliation Court in Swift County, Minnesota, alleging that Defendants violated his constitutional rights by deducting money from his gross wages. On October 4, 2001, Defendants removed the case to

JUL 3 1 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Federal District Court for the District of Minnesota, pursuant to 28 U.S.C. §§ 1441 and 1446; alleging federal question jurisdiction, pursuant to 28 U.S.C. § 1331. On October 11, 2001, Defendants brought their motion to dismiss or for summary judgment. On April 26, 2002, Plaintiff brought a Motion to Deny Dismissal or Summary Judgment. On April 29, 2002, Defendants filed their Reply in Support of Motion to Dismiss or for Summary Judgment.

**B. Facts.**

At the time the Complaint was filed, Plaintiff was an inmate at the Prairie Correctional Facility (PCF), a private prison owned and operated by Corrections Corporation of America, Inc. (CCA). (Complaint.) PCF participates in the Prison Industry Enhancement Certification Program (PIECP), pursuant to 18 U.S.C. § 1761. Id. The PIECP provides a means "to address inmate idleness and to provide inmates with work experience and training in marketable job skills." 64 FR (II)(c)(2) (1999). Under the statute, inmates receive wages "at a rate which is not less than that paid for work of a similar nature in the locality in which the work was performed, except that such wages may be subject to deductions which shall not, in the aggregate, exceed 80 per centum of gross wages." 18 U.S.C. § 1761(c)(2). These deductions are limited to use for taxes, reasonable charges for room and board, allocations for support of family, and contributions to any fund established by law to compensate victims of crime[1]. 18 U.S.C. § 1761(c)(2).

The Federal Register also requires specific authorization procedures for private prisons, including the following:

> Since private prison PIECP inmates' room and board expenses might otherwise be addressed in contracts for incarceration

---

[1]This final category is to receive "not more than 20 per centum but not less than 5 per centum of gross wages.

> services between private prisons and public agencies, BJA [Bureau of Justice Assistance] requires private prison CACs [Cost Accounting Centers] to obtain written approval from their respective public agency clients before taking the room and board deductions. In devising this requirement, BJA insures notice of this possible revenue source is received by appropriate public agencies without unduly burdening contractual relations to which it is not a party.

64 FR § 17006.

The PIECP also requires that inmates "have participated in such employment voluntarily and have agreed in advance to the specific deductions made from gross wages pursuant to this section, and all other financial arrangements as a result of participation in such employment." 18 U.S.C. § 1761(c)(4).

On June 19, 2000, Plaintiff agreed to such employment, as well as to having deductions of up to 80% taken from his gross wages. (Affidavit of Robert M. Lewis; Ex. A.)[2] In June 2000, Plaintiff began employment at Jacob's Trading Company, and continued through September 1, 2000. (Complaint.) During that period, CCA deducted 50% of Plaintiff's gross wages for room and board. Id.[3] On September 1, 2000, Jon E. Litscher, Secretary for the Wisconsin Department of Corrections, sent a letter to the Assistant Warden of the Prairie Correctional Facility. The letter included the following relevant sections:

> It is our understanding that the Minnesota Department of Corrections has designated PCF as a cost accounting center under its federal certification for Prison Industry Enhancement Programs

---

[2] The Court recognizes that by considering Defendants' attachment, it is transforming their motion to dismiss into a motion for summary judgment.

[3] The Complaint does not specify the amount deducted, stating only that Defendants deducted "rent." Defendants' motion to dismiss states that 50% of Plaintiff's gross wages were deducted for room and board.

> issued by the Bureau of Justice Assistance pursuant to 18 U.S.C. sec. 1761(c).
>
> To the extent that the PIE Certification Guidelines, 64 FR 17000, require approval by the remanding jurisdiction of the inmate worker participation in the PCF's PIE program, such approval is hereby granted.
>
> Also to the extent that the PIE Certification Guidelines, 64 FR 17000, require approval by the remanding jurisdiction of inmate worker room and board deductions from inmate wages, such approval is hereby granted. It is further understood that the amount of room and board deduction shall be set by PCF pursuant to its policies and procedures, and that the room and board deduction shall be retained by PCF.
>
> The approvals granted herein are retroactive to December 22, 1999, the date [of] the contract between the State of Wisconsin, Department of Corrections and the Corrections Corporation of America.

## C. Discussion.

### 1. Procedural Standard.

In considering a Rule 12(b)(6) motion to dismiss, the Court assumes all facts alleged in the complaint as true. Hishon v. 799 King & Spalding, 467 U.S. 69, 73 (1984). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996). Dismissal is appropriate only if "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). "Although it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).

> Rule 12(b)(6) itself provides that when matters outside the pleadings are presented and not excluded by the court, the motion

> shall be treated as one for summary judgment and disposed of as provided in Rule 56. Our court has interpreted the phrase "matters outside the pleadings" to include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings."

Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 948 (8th Cir. 1999) cert. denied 528 U.S. 1117 (2000) quoting Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992) (citation omitted).

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.

**2. Substantive Standard.**

Article I, § 10 of the Federal Constitution provides that "[n]o state shall . . . pass any . . . ex post facto Law.

> The constitutional prohibition and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused.

Beazell v. Ohio, 269 U.S. 167, 170 (1925).

"To fall within the *ex post facto* prohibition, a law must be retrospective–that is, 'it must apply to events occurring before its enactment'-- and it 'must disadvantage the offender affected by it.'" Lynce v. Mathis, 519 U.S. 433, 441 (1997) quoting Weaver v. Graham, 450 U.S. 24, 29

(1981). "Amendments to a regulation that merely clarify preexisting law are not subject to the various Constitutional limits on retroactivity that Zacher [plaintiff] invokes." Zacher v. Tippy, 202 F.3d 1039, 1045 (8th Cir. 2000).

"In order to maintain either a procedural due process claim or a takings claim plaintiffs must first establish that they have a protected property interest." McMaster v. State of Minnesota, 819 F. Supp. 1429, 1442 (D. Minn. 1993) citing Educational Assistance Corp v. Cavazos, 902 F.2d 617, 626 (8th Cir.) cert denied 498 U.S. 896 (1990).

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

"There is no constitutional right to prison wages and any such compensation is by the grace of the state." Hrbek v. Farrier, 787 F.2d 414, 416 (8th Cir. 1986). "Further a state legislature may grant a favor to a convicted criminal, but may also attach such conditions to the granting of the favor as it deems proper." Id.

**D. The Parties' Positions.**

Plaintiff contends that Defendant "lacked jurisdiction to deduct any form of room & board/ rent from my Jacob's check without first securing the written approval from the sending jurisdiction secretary Jon E. Litscher." Because the authorizing letter was not written until September 1, 2000, Plaintiff states it is void because it is retroactive, and is "a direct violation of the ex post facto laws." Plaintiff also alleges that Defendants have also violated the Due Process

Clause,[4] and the Supremacy Clause.

Plaintiff requests the return of wages deducted from June 2000 through August 2000. In addition, he requests the return of his filing fees in this action. Together, these total $688.73. Plaintiff also requests any other cost the court may deem appropriate.

Defendants respond that Plaintiff has failed to allege facts that would demonstrate a due process or ex post facto violation. Defendants explain that Plaintiff agreed to all deductions before he began work. Therefore, according to Defendants, he waived any objections, and his claims fail as a matter of law.

Defendants also state that there is no private cause of action under 18 U.S.C. § 1761, for Plaintiffs' claims. They argue that "any complaint about the timing of deductions was for the State of Wisconsin," rather than for Plaintiff. Defendants state that the requirement of public agency authorization is for the benefit of the state, rather than the prisoner. Defendants cite McMaster, 819 F. Supp. at 1441, for the proposition that "although there are benefits to an inmate for his participation in the PIECP, . . . those benefits do not accrue specifically to inmates, but to prison administrators and to society in general."

With respect to the ex post facto claim, Defendants explain that there was "no relevant law passed after the occurrence of any fact or act, which retrospectively changes the legal consequences for Plaintiff." Instead, the statute and corresponding federal regulation both existed before CCA took deductions from Plaintiff's wages. Citing Fleming v. Nestor, 363 U.S. 603 (1960), Defendants also state there can be no ex post fact violation in the present case,

---

[4]In the Complaint, Plaintiff refers to this as a violation of the substantive component of the Due Process Clause, but in his Motion to Deny Dismissal or Summary Judgment, he states that Defendants violated procedural due process.

because the deductions in wages were taken to defray prison costs rather than to punish Plaintiff.

With respect to the due process claim, Defendants state that Plaintiff has no protected property interest in receiving prison wages. Further, Defendants cite various Eighth Circuit cases for the proposition that there is no constitutional right to be paid for work performed during imprisonment. Consequently, they argue that this claim must also fail as a matter of law.

Finally, Defendants state that even if the Court finds Plaintiff has been unlawfully deprived of his prison wages, he is only entitled to the wages deducted from June 12, 2000 through September 1, 2000, the date the State of Wisconsin sent its written approval for CCA to deduct room and board expenses from Plaintiff's wages.

**E. The Court's Recommendation.**

The Court recommends granting Defendants' motion for summary judgment. Plaintiff's ex post facto claim is based on Litscher's authorization letter having been written after Plaintiff started working and, consequently, after Defendants began deducting money from his gross wages. But the letter itself is not a law or governmental regulation. The timing of the letter might present an issue of contractual performance, or the lack of a necessary condition precedent. But in either case, it does not implicate the Constitution's ex post facto prohibition. Further, all of the relevant laws and regulations existed prior to the events involved in the present suit. Thus, they can not produce an ex post facto violation. See Mathis, 519 U.S. at 441 (stating that to fall within the ex post fact prohibition, a law must apply to events occurring before its enactment).

In addition, Plaintiff can not state a claim for a due process violation. Plaintiff lacks a property right to the wages in question. There is no constitutional right to prison wages. See Hrbek, 787 F.2d at 416. Further, Plaintiff lacked any state created right to the withheld wages.

Plaintiff voluntarily consented to the withholding on June 19, 2000. In addition, although Defendants only withheld 50% of Plaintiff's wages, the PIECP permits Defendants to withhold up to 80%. Hence, Plaintiff had no legitimate claim of entitlement to the withheld wages. Because Plaintiff can prove no set of facts that would entitle him to the relief he seeks, the Court recommends granting Defendants' motion. See Coleman, 40 F.3d at 258.

Because the Court recommends granting Defendants' motion to dismiss,

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

(1) Defendants' Motion to Dismiss or for Summary Judgment (Doc. No. 2) be **GRANTED**.

Dated: July 30, 2002.

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by August 13, 2002, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.