**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Raymond Johnson,** **Civil No. 01-1827 (JRT/SRN)**

**Plaintiff,**

v.

**ORDER**

**Warden R. Timothy O'Dell and Corrections Corporation of America, Inc., sued as Prairie Correctional Facility,**

**Defendants.**

---

Plaintiff is pro se.

Robert M. Lewis, Esq. and Rebecca A. Chaffee, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on **Plaintiff's** Motion for Discovery (Doc. No. 8) and Motion for Appointment of Counsel (Doc. No. 9), and on **Defendants'** Motion to Stay Discovery (Doc. No. 10-1) and for Order Denying Plaintiff's Motion for Appointment of Counsel (Doc. No. 10-2), and Motion to Strike Documents Submitted by Jackson and Johnson in Related Files (Doc. No. 16).

## I. FACTUAL BACKGROUND

### A. Procedural History.

In the present case, Plaintiff filed the Complaint on September 18, 2001, in Conciliation Court in Swift County, Minnesota, alleging that Defendants violated his constitutional rights by deducting money from his gross wages. On October 4, 2001, Defendants removed the case to

AUG 0 1 2002
FILED ____
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ____
DEPUTY CLERK ____

Federal District Court for the District of Minnesota, pursuant to 28 U.S.C. §§ 1441 and 1446; alleging federal question jurisdiction, pursuant to 28 U.S.C. § 1331. On October 12, 2001, Defendants brought their motion to dismiss or for summary judgment.[1] On March 20, 2002, Plaintiff brought his Motion for Discovery and Motion for Appointment of Counsel. On April 12, 2002, Defendants brought their Motion to Stay Discovery and for Order Denying Plaintiff's Motion for Appointment of Counsel. On April 22, 2002, Plaintiff brought a Motion to Deny Dismissal or Summary Judgment. On April 24, 2002, Defendants filed their Reply in Support of Motion to Dismiss or for Summary Judgment. On April 29, 2002, Plaintiff filed a letter in response to Defendants' reply. In response to Plaintiff's letter, on May 1, 2002, Defendants brought their motion to strike documents submitted by Jackson and Johnson in related files.

**B. Facts.**

At the time the Complaint was filed, Plaintiff was an inmate at the Prairie Correctional Facility (PCF), a private prison owned and operated by Corrections Corporation of America, Inc. (CCA). (Complaint.) PCF participates in the Prison Industry Enhancement Certification Program (PIECP), pursuant to 18 U.S.C. § 1761. Id. The PIECP provides a means "to address inmate idleness and to provide inmates with work experience and training in marketable job skills." 64 FR (II)(c)(2) (1999). Under the statute, inmates receive wages "at a rate which is not less than that paid for work of a similar nature in the locality in which the work was performed, except that such wages may be subject to deductions which shall not, in the aggregate, exceed 80

[1]This motion was addressed in a separate Report and Recommendation.

per centum of gross wages." 18 U.S.C. § 1761(c)(2). These deductions are limited to use for taxes, reasonable charges for room and board, allocations for support of family, and contributions to any fund established by law to compensate victims of crime[2]. 18 U.S.C. § 1761(c)(2).

The Federal Register also requires specific authorization procedures for private prisons, including the following:

> Since private prison PIECP inmates' room and board expenses might otherwise be addressed in contracts for incarceration services between private prisons and public agencies, BJA (Bureau of Justice Assistance) requires private prison CACs [Cost Accounting Centers] to obtain written approval from their respective public agency clients before taking the room and board deductions. In devising this requirement, BJA insures notice of this possible revenue source is received by appropriate public agencies without unduly burdening contractual relations to which it is not a party.

64 FR § 17006.

The PIECP also requires that inmates "have participated in such employment voluntarily and have agreed in advance to the specific deductions made from gross wages pursuant to this section, and all other financial arrangements as a result of participation in such employment." 18 U.S.C. § 1761(c)(4).

On June 19, 2000, Plaintiff agreed to such employment, as well as to having deductions of up to 80% taken from his gross wages. (Affidavit of Robert M. Lewis; Ex. A.) In June 2000, Plaintiff began employment at Jacob's Trading Company, and continued through September 1, 2000. (Complaint.) During that period, CCA deducted 50% of Plaintiff's gross wages for room

---

[2]This final category is to receive "not more than 20 per centum but not less than 5 per centum of gross wages.

and board. Id.[3] On September 1, 2000, Jon E. Litscher, Secretary for the Wisconsin Department of Corrections, sent a letter to the Assistant Warden of the Prairie Correctional Facility. The letter included the following relevant sections:

> It is our understanding that the Minnesota Department of Corrections had designated PCF as a cost accounting center under its federal certification for Prison Industry Enhancement Programs issued by the Bureau of Justice Assistance pursuant to 18 U.S.C. sec. 1761(c).
>
> To the extent that the PIE Certification Guidelines, 64 FR 17000, require approval by the remanding jurisdiction of the inmate worker participation in the PCF's PIE program, such approval is hereby granted.
>
> Also to the extent that the PIE Certification Guidelines, 64 FR 17000, require approval by the remanding jurisdiction of inmate worker room and board deductions from inmate wages, such approval is hereby granted. It is further understood that the amount of room and board deduction shall be set by PCF pursuant to its policies and procedures, and that the room and board deduction shall be retained by PCF.
>
> The approvals granted herein are retroactive to December 22, 1999, the date [of] the contract between the State of Wisconsin, Department of Corrections and the Corrections Corporate of America.

## II. DISCUSSION

### A. Plaintiff's Motion for Discovery.

Plaintiff requests copies of the following: (1) the complete contract from Wisconsin with Corrections Corporation of America; (2) the signed contract agreement allowing Wisconsin

---

[3]The Complaint does not specify the amount deducted, stating only that Defendants deducted "rent." Defendants' motion to dismiss states that 50% of Plaintiff's gross wages were deducted for room and board.

inmates to work at Jacobs Trading Company under the PIECP guidelines; (3) all documents which may pertain to Wisconsin inmates signed by Jon E. Litscher; (4) all documents stating the amount of room and board and dates in which room and board expenses were deducted from Wisconsin inmates who worked at Jacobs Trading Company; (5) all documents stating the names of each Wisconsin inmate whose room and board costs were deducted while working at Jacobs trading Company; (6) any insurance agreement under which any person carrying on as an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment; and (7) the contract between the PCF facility in Appleteon, Minnesota and the PIECP guideline.

Defendants respond that the Court should stay all discovery pending resolution of their dispositive motion. They argue that their motion to dismiss could potentially resolve the present case entirely. Consequently, Defendants state that "to prevent unwarranted discovery that would not affect the pending dispositive motion, the Court should enter a protective order."

The Court denies Plaintiff's motion. In its July 30, 2002 Report and Recommendation, the Court recommended granting Defendants' motion for summary judgment. The ruling on that motion would not be affected by further discovery. As the Court stated in its Report and Recommendation, Plaintiff can not state an ex post facto claim, because Defendants' authorization procedure is at issue, rather than a federal or state law or regulation. This legal shortcoming can not be cured by any of the discovery Plaintiff seeks. In addition, Plaintiff can not state a due process claim because he has no legitimate claim of entitlement to the deducted wages. This fact will also not be altered by the discovery he seeks, regardless of what it contains. Therefore, the additional discovery can not benefit Plaintiff's case, and would only

cause needless expense. Consequently, the Court denies this motion.

**B. Plaintiff's Motion for Appointment of Counsel.**

Plaintiff requests that the Court appoint counsel to represent him. Plaintiff states that he is not knowledgeable in the law, and the individual who was assisting him in making his case is no longer present to help him. He believes counsel would help him save money and time prosecuting the present case. And finally, Plaintiff states that he is indigent, and unable to afford an attorney.

Defendants respond that the Court should deny Plaintiff's motion. They state that Plaintiff commenced this civil action pro se, and has no right to an appointment of counsel. Defendants argue that the present case is "not so complicated or confusing that appointment of counsel would be necessary or helpful." They explain that "all parties agree that deductions were taken from the Plaintiff's wages and the written agreements to take such deductions that were signed by Mr. Jackson and Mr Johnson have not been refuted." Defendants also observe that without counsel, Plaintiff was capable of citing case law, statutes, the Federal Register, and the United States Constitution, in support of his claims.

Finally, Defendants state that Plaintiff has not demonstrated that he is unable to afford counsel. Instead, they explain that he paid the requisite filing fee and is currently working and receiving prison wages. Moreover, Defendants state that Plaintiff did not have in forma pauperis status in state court, and nothing has changed to require he have in forma pauperis status in this Court. Defendants also argue that the plaintiffs in these four consolidated cases are working together, "and thus can depend on each other for assistance."

The Court denies Plaintiff's motion. Pro se litigants do not have a constitutional or

statutory right to counsel in civil cases. Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). Rather, the appointment of counsel in cases such as this one is a matter committed to the discretion of the trial court. McCall v. Benson, 114 F.3d 754, 756 (8th Cir. 1997); Mosby v. Mabry, 697 F.2d 213, 214 (8th Cir. 1982). Among the factors the court should consider in determining whether to appoint counsel are the factual complexity of the case, the ability of the litigant to present his claims, the complexity of the legal issues, and whether both the litigant and the court would benefit from having the litigant represented by counsel. McCall, 114 F.3d at 756; Johnson v. Williams, 788 F.2d 1319, 1322-23 (8th Cir. 1986).

The Court finds that neither the facts nor the legal issues involved in this case are so complex as to warrant appointment of counsel. It appears to the Court that Plaintiff has the threshold ability to articulate his claims and to argue his positions, and that he is able to communicate effectively with the Court. Moreover, the Court is currently satisfied that appointment of counsel would not substantially benefit the Court or Plaintiff. Therefore, Plaintiff's request for counsel is denied.

**C. Defendants' Motion to Strike Documents Submitted by Jackson and Johnson in Related Files.**

Defendants argue that Plaintiff's letter filed on April 29, 2002 should be stricken. Citing D. Minn. LR 7.1(b) and 7.1(f), Defendants state that "no additional submissions in connection with a dispositive motion are permitted after the moving party's reply brief." Defendants add that Plaintiff's submission is merely a reference to a docketing statement from the state court from which the present case was removed, and "does nothing to discourage dismissal." Finally, Defendants state that Plaintiff misrepresents their position, because they do not admit that they

lacked authority to take deductions from his pay.

The Court denies Defendants' motion as moot. The Court has already recommended dismissing Plaintiff's case. The April 29, 2002 letter does not alter this Recommendation. The letter briefly restates part of Plaintiff's argument contained in the Complaint, and in his Motion to Deny Dismissal or Summary Judgment. It also invokes the "fruit of the poisonous tree" doctrine. This doctrine, however, applies to criminal cases and "excludes evidence obtained from or as a consequence of lawless official acts." Costello v. United States, 365 U.S. 265, 280 (1961). Therefore, Plaintiff's "fruit of the poisonous tree" argument is not pertinent to the present case. The only additional material in the letter concerns details of the initial filing in Swift County Conciliation Court. These details should have no effect on the outcome of the present case. Because the letter does not affect the Court's recommendation, it denies Defendants' motion as moot.

**THEREFORE, IT IS HEREBY ORDERED that:**

(1) Plaintiff's Motion for Discovery (Doc. No. 8) is **DENIED**;

(2) Plaintiff's Motion for Appointment of Counsel (Doc. No. 9) is **DENIED**.

(3) Defendants' Motion to Stay Discovery (Doc. No. 10-1) and for Order Denying Plaintiff's Motion for Appointment of Counsel (Doc. No. 10-2) is **GRANTED**;

(4) Defendants' Motion to Strike Documents Submitted by Jackson and Johnson in Related Files (Doc. No. 16) is **DENIED AS MOOT**;

Dated: July 31, 2002

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge